BUNEL (CONFRAMP v.).    See Case No. 3,-098.

---

## Case No. 2,134.

### BUNKLEY v. DE WITT et al.

[33 Hunt, Mer. Mag. 74.]

Circuit Court, S. D. New York.    May 18, 1855.

LITERARY PROPERTY—AUTHORSHIP—ENJOINING PUBLICATION.

[1. Publishers who, prior to the printing of a manuscript work, were expressly forbidden by the alleged authoress to publish it, claiming that the person who contracted with them had no authority, have no special ground of favor in a suit to restrain the publication on the ground that they have already printed the book.]

[2. In a suit to restrain the publication of a certain manuscript work, the defense was that complainant was not the authoress, that she consented that her name should be used as authoress, and that, being the authoress, she authorized a certain person to contract with defendants for its publication. Held, on the evidence, that such defenses were not sustained.]

[In equity. Bill by Josephine M. Bunkley against Robert M. De Witt, James Davenport, William S. Tisdale, and Charles H. Beale to restrain publication of a certain manuscript work. Motion for injunction pendente lite.]

Gen. Sanford, for complainant.
P. Y. Cutter, for defendants.

NELSON, Circuit Justice. This is a bill filed by the complainant against the defendants for the purpose of restraining them from the publication of certain manuscripts of a work entitled "My Book, or the Veil Uplifted," of which she claims to be the proprietor and authoress, and for which she has taken out a copyright. The motion is now for a preliminary injunction, and involves the merits of the controversy only so far as may be necessary to ascertain whether or not the case presented is such as to require the court to interfere and restrain the publication till the final hearing. The defendants set up two main grounds of defense: (1) That the complainant is not the proprietor and authoress of the manuscripts: and (2) that admitting her to be the proprietor and authoress, Beale, one of the defendants, was duly authorized to contract, on her behalf, for the printing and publication of the work, and did, in pursuance thereof, contract with De Witt & Davenport, two of the other defendants. for such publication.

As to the first ground—the book has already been printed, and a copy handed up with the papers on this motion, and is now before me. It is entitled "My Book, or the Veil Uplifted. A Tale of Popish Intrigue and Policy. By Josephine M. Bunkley, Late Novice at St. Joseph's, Maryland. Including a Narrative of her Residence at, and Escape from, that Institution." There is also on one of the fly-leaves the following: "To American parents and daughters, as an affectionate warning against error, and to those unselfish patriots who have nobly dared to free and to preserve the public from the dangers of Jesuitical influence, this volume is respectfully dedicated by the author." And in an address to the reader on another leaf, it is remarked "that the writer would have preferred to remain unnoticed, and to enjoy the quiet repose of domestic life, without being forced to assume a position to which she is totally unaccustomed. After having effected her escape from the institution in which she was confined, and which she entered with pure intentions and bright anticipations, she would willingly have suffered the veil of oblivion and pardon to have fallen over the transaction. But as her assertions have been denied, her motives misrepresented, and her good name threatened, she has no alternative, in justice to herself and friends, but to speak the 'whole truth and nothing but the truth,' in order to vindicate her action. Her 'statement' will be found in the following pages; and as she earnestly desires to impress the American people with a sense of their danger from the

controlling influence of a religion which tends to degrade the mind, and subject the will to the sway of a wily priesthood, a simple story, founded on facts, is added, for which the author requests the indulgence of her readers."

We have referred to these extracts as evidence of the authorship of the work contained in the book itself; and which, as it respects the complainant and these defendants, has a very material bearing upon the issue between them. Their position is, as respects this branch of the defense to her bill, that she is not the authoress, but, on the contrary, that the work is the joint production of Beale, one of the defendants, and Miss Upshur; and, being the authors, they, or any one representing them, had a right to contract for the publication, and to take out a copyright. The book itself, as we have seen, refutes this position, unless, indeed, we adopt the conclusion that the complainant's name has been most unwarrantably used. It is said, however, that she consented to the use of her name, although not in point of fact, as the authoress. This defense sounds harshly in a court of equity from parties who deny her authorship, and at the same time are seeking to realize to themselves great profits, which it is supposed will result in the sale of the work from the use of her name. If the fact of consent was shown, it would indeed turn the complainant out of court, but it would be upon the defect of her own case as presented, rather than any merit in the defense. A complete answer, however, is that the consent claimed is not sustained upon the proof before me. We will simply add, upon this branch of the case, that there is considerable evidence of the authorship of the complainant to a large portion of the book, as the case stands, besides that derived from the work itself, and which, taken together, overcomes the contrary evidence relied on.

The next question is, admitting the complainant to be the author, was Beale, one of the defendants, authorized to contract for the publication of the book with the publishers? There is certainly some conflict in the evidence on this point. As this branch of the defense assumes the complainant to be the proprietor and authoress, the burden is upon the defendants to establish the authority. We have looked into the papers with some care upon this question, and with a view to its proper determination, and must say that the weight of the proof, as it stands, is against it. The defendants, De Witt & Davenport, the publishers under the contract with Beale, have already printed the book, and of course have been subjected to a considerable expense, and an appeal has been made on this ground in their favor, as distinguishing the case from that simply between the complainant and Beale. But the proofs show that these defendants not only had notice of complainant's rights, but were

expressly forbidden by her to print or publish the book, she claiming that Beale had no authority to make the contract before they had entered upon this expense. They are, therefore, chargeable with notice of the want of authority on the part of Beale, if, in point of fact, no such authority existed, and are in no better situation than Beale himself in this issue with the complainant. Indeed, the proofs show that these defendants, after they were forbidden to print and publish, and before they entered upon the business, sought a negotiation themselves, through their friend and agent, with her, to procure her consent and failed, the complainant insisting that the manuscripts belonged to her, and had been improperly withheld, and that Beale had no authority to make the contract.

The case is a peculiar one. The defendants are seeking to print and put into circulation a work in the name of an authoress, which name, as is obvious, is supposed to give to it its chief interest and attraction in the public estimation, against her remonstrance, and, as she claims, not only in violation of her rights, but also in some respects, as printed and sought to be published, in disparagement of her character, and one, and the principal, answer to her complaint is that she is not the authoress, and that the work is the production of other minds. Another ground is, that although not the authoress, she consented, in consideration of receiving a portion of the profits of the work, that her name should be used as the authoress of it. A third, that being the authoress and proprietor, and therefore having a right to control the printing and publication, she authorized Beale, one of the defendants, to contract for the same with De Witt & Davenport, two of the other defendants. There is no pretense that he had any written authority. It was sought to be made out by verbal statements and corroborating circumstances. This is met by the denial of authority in any form by the complainant, supported by the deposition of her father and sister. If they are to be credited, Beale has repeatedly admitted that he had no authority, had done wrong, and expressed his regret at his conduct in the business. The deposition of the father, who naturally must have taken a deep interest in the matter, is very full and particular, both as to the relation in which Beale stood in respect to the manuscripts of his daughter, the terms and conditions of it, and also as to his admissions since the difficulty has arisen, repeatedly made to the father, that he had acted without authority in entering into the contract for publication. The book itself contains a certificate of the mayor, and other public men of Norfolk, of the character of the father as "a gentleman of probity and honor," and entitled, therefore, to the highest confidence.

We are satisfied, therefore, that neither of these grounds of defense has been sustained,

and that in the present posture of the case, the preliminary injunction heretofore granted must be continued till the final hearing.